**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| NORTHSIDE PHARMACY, LLC, (a Texas limited liability company) | § § § | |
| | § | CIVIL ACTION NO.: 24-3951 |
| *Plaintiff*, | § | |
| | § | |
| | § | |
| v. | § | COMPLAINT FOR DECLARATORY |
| | § | AND INJUNCTIVE RELIEF |
| | § | |
| DRUG ENFORCEMENT AGENCY, a Federal administrative agency, | § § | |
| | § | |
| and | § | |
| | § | |
| ANNE MILGRAM, in her official capacity as Administrator of the Drug Enforcement Agency, | § § § | |
| | § | |
| *Defendants*. | § | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Plaintiff, Northside Pharmacy ("Northside"), by and through counsel, and respectfully brings this action to challenge the unconstitutional structure and processes employed by Defendants, the Drug Enforcement Agency ("DEA") and Anne Milgram, in her official capacity as DEA Administrator, in adjudicating the enforcement action brought against Northside for an alleged violation of the Controlled Substances Act. Northside seeks declaratory and injunctive relief to halt the unconstitutional

administrative proceedings, reinstate its Certificate of Registration, and protect its rights under the U.S. Constitution.  In support thereof, Northside would the Court the following:

## I. INTRODUCTION

1.    Northside Pharmacy is a locally owned, community pharmacy licensed by the Texas State Board of Pharmacy and registered with the DEA under the Controlled Substances Act ("CSA") to dispense controlled substances.  Northside has served its patients in full compliance with federal and state laws since 2015.

2.    On or about July 16, 2024, the DEA issued an Order to Show Cause and Immediate Suspension of Registration ("OSC/ISO") against Northside, suspending its Certificate of Registration ("COR").  The DEA alleged that Northside's continued registration posed "an imminent danger to public health or safety."

3.    Northside now brings this action to assert a three-prong constitutional challenge to the DEA's adjudicatory process contending that:

    a. First, the current structure, featuring Administrative Law Judges (ALJs) presiding over an administrative tribunal, violates Article II of the U.S. Constitution (separation-of-powers doctrine), both facially and as-applied to Northside.

    b. Second, the combination of prosecutorial and adjudicatory functions within the DEA creates an inherently unfair system that violates due process protections under the Fifth Amendment, both facially and as-applied to Northside.

c. Third, the immediate suspension of Northside's right to possess and dispense controlled substances without meaningful pre-deprivation process constitutes the deprivation of a private right in violation of Fifth Amendment due process protections, both facially and as-applied to Northside.

## II. PARTIES

4.  Plaintiff Northside Pharmacy is a Texas limited liability company that operates a community pharmacy located in Houston, Texas.  Northside is licensed by the Texas State Board of Pharmacy and holds a Certificate of Registration from the Drug Enforcement Administration under the Controlled Substances Act, authorizing it to dispense controlled substances.

5.  Defendant Drug Enforcement Administration is a federal agency within the United States Department of Justice responsible for enforcing the controlled substances laws and regulations of the United States.  The DEA is headquartered in Arlington, Virginia, and is responsible for the oversight and enforcement actions related to Northside's Certificate of Registration.

6.  Defendant Anne Milgram is the Administrator of the Drug Enforcement Administration, named in her official capacity.  As Administrator, Ms. Milgram has oversight and decision-making authority over the DEA's enforcement actions, including the issuance of the Order to Show Cause and Immediate Suspension of Registration against Northside. She is sued in her official capacity as DEA Administrator.

### III. JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as the case arises under the Constitution of the United States.

8. This action seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, granting this Court jurisdiction to issue a declaratory judgment and further necessary relief.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims occurred within this judicial district, and the Defendants are officers or agencies of the United States.

### IV. FACTUAL BACKGROUND

**A. Northside Pharmacy's Operations and Regulatory Compliance**

10. Northside Pharmacy, a locally owned community pharmacy is licensed by the Texas State Board of Pharmacy.  Additionally, Northside holds a Certificate of Registration ("COR"), issued by the DEA, authorizing it to purchase, possess, and dispense controlled substances in compliance with the Controlled Substances Act ("CSA").

11. Northside has operated in full compliance with federal and state laws since it was established in 2015, without any history of disciplinary actions by either the Texas State Board of Pharmacy ("TSBP") or the DEA.

12. Northside serves a wide range of patients, including some suffering from chronic and acute conditions that make them reliant on controlled substances, including opioids, to manage pain and perform activities of

daily living.  These patients depend on Northside to provide timely access to essential medications.

## B. DEA's Enforcement Action

13.   On or about, July 16, 2024, the DEA served an Order to Show Cause and Immediate Suspension of Registration ("OSC/ISO") on Northside immediately suspending its COR.  The suspension was based on the DEA's conclusion that Northside's continued registration constitutes "an imminent danger to the public health or safety" under 21 U.S.C. § 824(d).

14.   Along with the suspension, the Government seeks to revoke Northside's COR pursuant to 21 U.S.C. § 824(a)(4) and to deny any pending applications for renewal or modification of its COR, claiming Northside's continued registration is inconsistent with the public interest as defined in 21 U.S.C. § 823(g)(1).

15.   Without prior notice or the opportunity to challenge the DEA's findings, the Immediate Suspension Order immediately halted Northside's ability to purchase, possess, or dispense controlled substances, rendering it unable to meet the needs of its patients for these critical medications. This has caused irreparable harm to the business, threatening its financial viability as its patients are forced to seek other pharmacies that fill all their prescriptions including controlled medications.

16.   Northside is now subject to an ongoing administrative proceeding in which the DEA serves as both prosecutor and adjudicator, further comprising the fairness and constitutionality of the process.  Judicial review is only available after the administrative process has been fully

exhausted, which may take months or even years – time during which
Northside continues to suffer ongoing harm.

**C. Overview of the DEA's Internal Review Process**

17.   While the CSA provides five grounds under which the DEA can seek the
revocation of a pharmacy registrant's COR, by far the most commonly
invoked is that the registrant "has committed such acts as would render
[its] registration ... inconsistent with the public interest ..." pursuant to
21 U.S.C. § 824(a)(4).  The DEA has relied on this public interest
standard in seeking to revoke Northside's registration.

18.   Service of an Order to Show Cause initiates an administrative
revocation proceeding pursuant to the Controlled Substances Act,
presided over by a DEA Administrative Law Judge ("ALJ") appointed
pursuant to 5 U.S.C. § 3105.  These hearings are governed by:

   a.  The Administrative Procedure Act ("APA") (5 U.S.C. § 551, et
       seq);

   b.  The Controlled Substances Act (21 U.S.C. § 801, et seq.);

   c.  Relevant federal regulations (21 U.S.C. § 1300, et seq.);

   d.  Precedential decisions issued by the United States Courts of
       Appeals; and

   e.  Final orders issued by the DEA Administrator and published in
       the Federal Register.

19.   The ALJs who preside over these administrative tribunals, despite
performing a judiciary function, are not Article III judges.  Rather, they
are DEA employees who are appointed for life terms under the APA and
enjoy multiple layers of protection against removal under

5 U.S.C. § 7521(a), (b)(1).  Once appointed, ALJs may only be removed for good cause as determined by the Merit Systems Protection Board ("MSPB"), a separate agency whose members are themselves removable by the President only for cause, such as "neglect of duty" or "malfeasance.  These protections severely restrict the President's authority to remove an ALJ.

20.    In these enforcement actions, the DEA serves as both prosecutor and adjudicator.  The presiding ALJ acts as both the judge and the trier of fact.  Trial attorneys in DEA Office of the Chief Counsel prosecute the case.  At the conclusion of hearing, the ALJ submits his or her written findings to the DEA Administrator makes the final determination.  The law permits the DEA Administrator discretion to adopt, reject, or modify the ALJ's finding; however, historically, DEA administrators have shown significant deference to the ALJ's recommended findings.

**D. Harm to Northside as a Result of the DEA's Actions**

21.    The Immediate Suspension Order was issued against Northside under the pretext of an "imminent danger" to public health and safety.  However, the DEA fails to proffer any substantive evidence demonstrating such danger.  The DEA has not alleged any direct harm to patients or the public, nor has it alleged any instances in which controlled substances were dispensed without a prescription written by a properly authorized physician.  Instead, the DEA's enforcement action is based on two categories of allegations:

- Variances in controlled substance inventories, which Northside contends are based on flawed audits conducted by DEA investigator that can objectively be refuted; and
- The presence of unresolved "red flags" which the DEA argues are "indicative" of diversion.

22. Notably, any challenge to the DEA's determination to immediately suspend a pharmacy registrant's COR is beyond the jurisdiction of the tribunal.  Pursuant to 21 U.S.C. § 824(d)(1), an immediate suspension order is final when issued, is not reviewed by a DEA ALJ, and continues in effect until the conclusion of the administrative proceedings, including judicial review thereof.  Thus, regardless of the final outcome of the DEA's enforcement action, Northside is forced to endure ongoing, irreparable harm to its business as well as its owners, employees, and patients.

23. The ISO deprives Northside of its COR, a public right, while simultaneously causing irreparable harm to its business, financial standing, and reputation—private rights—without the right to predeprivation due process.

## V. CONSTITUTIONAL ARGUMENTS

### A. Violation of Article II – Separation-of-Powers Doctrine

24. Northside restates and incorporates by reference each and every allegation of the preceding paragraphs.

25. The Constitution vests executive authority in the President under Article II, requiring that executive officers remain accountable to the President to ensure the faithful execution of the laws.  However, the

dual-layer for-cause removal protections afforded to the DEA's Administrative Law Judges ("ALJs") unduly insulate them from Presidential oversight, in violation of this constitutional mandate. This issue was highlighted by the Supreme Court in *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), which held that such insulation violates the separation of powers by impeding the President's ability to remove officers who exercise executive power. As recently as last year, the Supreme Court reaffirmed this position in *Axon Enter. v. Fed. Trade Comm'n*, 143 S.Ct. 897, 898 (2023).

26.    Northside argues that this impermissible lack of accountability to the President renders the DEA's current review scheme unconstitutional. Further, being subject to an administrative regime that violates the separation-of-powers doctrine inflicts a "here-and-now" injury, resulting in both immediate and ongoing harm to Northside's operations and legal standing. *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S.Ct. 2183, 2196.

27.    The Supreme Court recognized the validity of this argument in *Axon*, finding that the separation-of-powers claim "is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker." *Axon*, at 903. This illegitimacy applies directly to Northside's case, where the ALJ deciding its future is shielded from Presidential oversight, creating an unconstitutional barrier to the President's executive authority.

28.    The Supreme Court further recognized that post-proceeding judicial to the court of appeals "can do nothing" because "a proceeding that has

already happened cannot be undone."  Any review of "structural constitutional claims would come too late to be meaningful."  *Id*., at 904.

29.   Given this unconstitutional structure, Northside's claims must be examined both as applied to its specific circumstances and a facial challenge to the overall DEA review process.

30.   <u>As-Applied to Northside</u>: Northside has been subjected to an unconstitutional process in which the outcome of the administrative proceeding, affecting Northside's livelihood and regulatory compliance, is determined by an ALJ who is unconstitutionally shielded from Presidential oversight.  As recognized in *Axon*, when ALJs exercise significant executive authority while being insulated from Presidential control, it undermines the executive branch's core function of law enforcement and violates Article II.

31.   <u>Facially</u>: The DEA's administrative review process is unconstitutional in all cases, as the structure of the dual-layer for-cause removal protections violates the executive authority of the President.  By protecting ALJs from direct Presidential accountability, this structure inherently undermines the President's constitutional duty to ensure the faithful execution of the laws, rendering the entire DEA adjudicatory system constitutionally defective, as the Supreme Court reasoned in *Axon and Free Enterprise Fund*.

**B. Violation of the Fifth Amendment - Due Process Clause (Combined Prosecutorial and Adjudicatory Functions)**

32.   Northside restates and incorporates by reference each and every allegation of the preceding paragraphs.

33.   The Due Process Clause of the Fifth Amendment guarantees the right to a fair and impartial tribunal in proceedings where life, liberty, or property interests are at stake.  The DEA's administrative structure, however, violates this fundamental right by allowing the DEA to act as both prosecutor and adjudicator in enforcement actions.  This combination of functions inherently biases the proceedings, depriving Northside of due process protections guaranteed by the Constitution. In *Axon*, the Supreme Court emphasized that combining prosecutorial and adjudicatory functions within a single agency raises serious due process concerns, as it creates a conflict of interest and undermines the impartiality required by the Fifth Amendment.

34.   This prosecutorial-adjudicatory structure displaces the well-established jurisdiction of district courts to resolve civil actions arising under federal law and the Constitution under 28 U.S.C. § 1331.

35.   While administrative agencies, such as the DEA, may adjudicate matters involving public rights, the adjudication of private rights has traditionally required oversight by Article III judges.  In *Axon*, Justice Thomas, concurring with the Court's decision, expressed "grave doubts about the constitutional propriety of Congress vesting administrative agencies with primary authority to adjudicate core private rights with only deferential judicial review on the back end."  *Axon*, at 906.

36.   Justice Thomas' comment highlights one additional flaw in the DEA's "all-under-one-roof" approach to adjudication of enforcement proceedings.  Final determinations, findings, and conclusions of these administrative tribunals are conclusive on courts of appeal "if supported substantial evidence."  21 U.S.C. § 877.  In *Jones Total Health Care Pharmacy, LLC v. Drug Enforcement Admin.*, 881 F.3d 823, 829 (11th Cir. 2018), the court, relying on *Consola v. Fed Mar. Comm'n*, 383 U.S. 607, 619-90, 86 S.Ct. 1018, noted "an administrative agency's finding is supported by substantial evidence even if two inconsistent conclusions [could be drawn] from the evidence (internal quotes omitted).  Finally, the fact that courts of appeal are not entitled to take their own evidence further limits their ability to independently assess the fairness of the proceeding.

37.   <u>As-Applied to Northside</u>: The DEA's process has subjected Northside to an inherently biased proceeding, in which the agency acts as both prosecutor—bringing the enforcement action—and adjudicator—ultimately determining the outcome.  The DEA Administrator, who has the final say in the case, is part of the same agency that investigates, prosecutes, and adjudicates the case, further compounding the conflict of interest.  This combination of prosecutorial and adjudicatory functions as-applied to Northside deprives it of its right to an impartial adjudicator under the Fifth Amendment, echoing the concerns raised in *Withrow v. Larkin*, 421 U.S. 35 (1975), which cautioned against agencies serving in dual roles that risk bias in the adjudicatory process.

38.   <u>Facially</u>: The structure of the DEA's administrative process violates the Due Process Clause in all cases, as it allows the agency to act as both prosecutor and adjudicator in its own enforcement actions.  This inherent conflict of interest creates systemic bias, rendering the entire process unfair and unconstitutional for all parties subject to it.  The Supreme Court's reasoning in *Axon* further highlights that due process cannot be satisfied when adjudicators and prosecutors reside within the same agency.

## C. Violation of the Fifth Amendment - Due Process Clause (ISO Deprivation of Private Right Without Predeprivation Due Process)

39.   Northside restates and incorporates by reference each and every allegation of the preceding paragraphs.

40.   The Immediate Suspension Order issued by the DEA deprives Northside of both public and private rights.  The Certificate of Registration, which allows Northside to dispense controlled substances under the Controlled Substances Act, is a public right.  However, the suspension of Northside's COR has caused irreparable harm, both immediate and on-going, to its business, financial standing, and reputation—all of which are private rights under the law.

41.   Under the Fifth Amendment's Due Process Clause, the deprivation of private rights requires predeprivation judicial review by an Article III court.  In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court established that due process mandates an opportunity for a hearing prior to the deprivation of significant property interests.  "A claim to a predeprivation hearing as a matter of constitutional right rests on the

proposition that full relief cannot be obtained at a postdeprivation hearing." *Id., at 331*.  Northside was not afforded such a hearing before its COR was suspended, violating the fundamental principle that due process must precede deprivation.  In *Axon*, where the Court further recognized that due process violations arise when immediate harm is caused without adequate predeprivation procedures.  Northside has suffered immediate and ongoing harm due to the lack of such procedural protections.

42.   The DEA may argue that the CSA explicitly allows immediate suspension of registrant's COR when continued registration presents "an imminent danger to the public health or safety" under 21 § U.S.C. § 824(d).  However, Northside reminds the Court that no good faith showing of imminent danger has been made in this matter.  *Ante*, at ¶ 21.  Northside further contends that in this, and many other enforcement actions, this phrase, "an imminent danger ...," has become akin to a mere formality.  By assertion alone, absent any substantive evidence in support thereof, these "magic words" provide the DEA with the result it seeks leaving registrants with no immediate recourse.

43.   <u>As-Applied to Northside</u>: The DEA's administrative process deprives Northside of its private rights—specifically its ability to operate as a pharmacy and continue serving its patients—without providing any predeprivation due process.  The ISO was issued without prior notice or an opportunity for Northside to challenge the DEA's findings, violating Northside's rights under the Fifth Amendment.

44. <u>Facially</u>: The DEA's ISO process is unconstitutional on its face because it allows for the deprivation of private rights without predeprivation judicial review.  This violates the Due Process Clause of the Fifth Amendment, not only as applied to Northside but for all entities subject to an ISO, creating a systemic due process violation.  The Court's holding in *Axon* underscores the broader constitutional defects in administrative processes that deprive individuals and businesses of private rights without proper procedural protections.

## V. THE COURT'S AUTHORITY AND OBLIGATION TO HEAR THIS CASE

### A. Establishment of Standing

45. <u>Injury-in-Fact</u>:  Northside Pharmacy has suffered a concrete and particularized injury as a result of the DEA's enforcement actions and the structural defects in the DEA's administrative process.  Specifically, the Immediate Suspension Order (ISO) and the ongoing administrative revocation proceedings under the unconstitutional tenure protections of DEA ALJs constitute a direct injury to Northside's business operations, financial stability, and regulatory status.  This "here-and-now injury" has been recognized by recent Supreme Court rulings as sufficient to meet the injury-in-fact requirement for standing, particularly when the plaintiff is subjected to unconstitutional agency authority.  See, e.g., *Roman Cath. Diocese*, 141 S.Ct. at 67; *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.)

46. <u>Causation</u>:  There is a direct causal connection between Northside's injury and the conduct of the DEA. The enforcement actions taken against Northside, including the issuance of the ISO and the

prosecution of the case by the DEA, directly result from and are facilitated by the structural deficiencies in the DEA's administrative process — specifically, the insulated ALJs who are shielded from appropriate executive oversight.  This setup diminishes the executive branch's ability to ensure that the laws are faithfully executed, impacting Northside's legal and constitutional protections.

47.    Redressability:  The injuries suffered by Northside are likely to be redressed by a favorable judicial decision. A court order declaring the DEA's administrative process, enjoining further enforcement actions under the current structure, and reinstating Northside's Certificate of Registration (COR) would remedy the violations and prevent ongoing and future harm to Northside.  Thus, the relief sought would address both the procedural and substantive injuries arising from the unconstitutional application of the law.

48.    Procedural Standing:  Furthermore, Northside's standing is bolstered by the nature of the injury as procedural, where the causation requirement is relaxed.  The procedural rights at issue—specifically, the right to a fair trial before an impartial judge—are designed to protect Northside's more substantive rights to operate freely under the law.  The deprivation of these procedural protections due to the unconstitutional insulation of ALJs directly impacts Northside, satisfying the relaxed causation standard for procedural injuries as outlined in Supreme Court precedents.  See *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 572 n.7 (1992).

**B. Consideration of the Thunder Basin Factors**

49.  <u>"Fairly Discernible" Congressional Intent</u>: The determination of whether it is "fairly discernible" that Congress intended to preclude district court jurisdiction over constitutional claims requires a close examination of the statutory scheme governing the DEA's administrative enforcement. While the Controlled Substances Act and its implementing regulations outline comprehensive administrative procedures, they do not indicate any intent to preclude immediate judicial review of constitutional challenges that are collateral to the merits of the enforcement action itself.  However, "the question is not whether Congress has specifically conferred jurisdiction, but whether it has taken it away." *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 25 (2012).  "When Congress decides to strip the courts of subject-matter jurisdiction in a particular area, it speaks clearly." *Minn–Chem, Inc. v. Agrium Inc.*, 683 F.3d 845, 852 (7th Cir. 2012).  Therefore, the absence of explicit statutory language requiring that such claims first be adjudicated administratively overwhelmingly supports the conclusion that Congress did not intend to deny district court jurisdiction over these constitutional issues.  Additionally, courts have long held a presumption in favor of judicial review of constitutional claims unless Congress has clearly expressed an intent to limit such review.  In the absence of clear statutory preclusion, the Court must next consider the factors established in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), to determine whether Northside's claims

are "of the type Congress intended to be reviewed within [the] statutory structure." *Id.*, at 212.

50.   <u>Foreclosure of Meaningful Judicial Review</u>:  The administrative process provided by the DEA does not allow for immediate or meaningful judicial review of constitutional claims, particularly those involving separation of powers and due process violations.  Northside faces ongoing and substantial harm from the enforcement actions and the Immediate Suspension Order, which continue to affect its business operations severely.  The DEA's administrative procedures, especially those not subject to ALJ review, effectively prevent Northside from obtaining timely relief, which could mitigate the significant damages it is currently suffering.  The lack of an expedient judicial mechanism within the DEA's framework to address these constitutional grievances underscores the necessity for this Court's intervention.

51.   <u>Wholly Collateral</u>:  Northside's constitutional challenges are wholly collateral to the merits of the underlying controlled substance regulation issues.  These challenges focus specifically on the structural and procedural defects within the DEA's administrative process, not on the factual circumstances of Northside's compliance with the Controlled Substances Act.  This distinct separation underscores that the resolution of these constitutional claims will not impact the agency's decision-making regarding Northside's compliance, thus fitting squarely within the criteria established by the Supreme Court for judicial review of administrative actions.

52. <u>Outside the Agency's Expertise</u>:  The constitutional issues raised by Northside, including those related to separation of powers and due process, fall outside the DEA's expertise and statutory mandate. The DEA is equipped to enforce drug laws and regulate controlled substances, not to adjudicate complex constitutional matters.  This Court, by contrast, is specifically tasked with resolving such fundamental legal questions, which are central to ensuring that government actions comply with the United States Constitution.  The agency's lack of competency in handling these specific legal issues further justifies judicial review, as per the Thunder Basin precedent.

## VI. REQUESTED RELIEF

53. In light of the foregoing, Northside Pharmacy respectfully requests the following relief from this Honorable Court:

    a. **Declare** that the DEA's administrative review process, particularly the tenure protections afforded to DEA ALJs, violates Article II of the U.S. Constitution by unduly insulating these executive agents from Presidential oversight and control, thereby infringing upon the separation-of-powers doctrine.

    b. **Declare** that the combined prosecutorial and adjudicatory functions within the DEA, as currently structured, violate the Due Process Clause of the Fifth Amendment, compromising Northside's right to a fair and impartial tribunal.

    c. **Declare** that the process for issuing Immediate Suspension Orders (ISOs) by the DEA, which deprives registrants of their

Certificate of Registration (COR) without predeprivation judicial review, violates the Due Process Clause of the Fifth Amendment.

d. **Enjoin** the DEA and its Administrator from continuing the administrative enforcement actions against Northside Pharmacy under the current unconstitutional framework, and from enforcing any Immediate Suspension Order that has been issued without proper constitutional safeguards.

e. **Order** the reinstatement of Northside Pharmacy's Certificate of Registration (COR), ensuring that no further suspensions or revocations occur without adherence to constitutional due process protections.

f. **Award** Northside Pharmacy reasonable costs and attorneys' fees incurred in connection with this action, as allowed under applicable law.

g. **Grant** such other and further relief as the Court deems just and proper.

Date: October 16, 2024

Respectfully submitted,

/s/ *Tommy Swate*

Tommy Swate
Attorney for Defendant,
    Northside Pharmacy, LLC
TBN: 19557705
403 Wild Plum St.
Houston, Texas 77013
swatemd@aol.com
713-377-4860

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of October 2024, a true and correct copy of the foregoing *Complaint for Injunctive and Declaratory Relief* was served, as noted below, upon counsel of record for all parties in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

*/s/ Tommy Swate*
Tommy Swate

*Via certified mail*:

The Honorable Merrick Garland
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-0001

The Honorable Anne Milgram
Administrator
Drug Enforcement Agency
8701 Morrissette Drive
Springfield, VA 22152

Civil Process Clerk
United States Attorney's Office
1000 Louisiana Street
Suite 2300
Houston, TX 77002

*Via email*:

The Honorable Teresa A. Wallbaum
DEA Office of Administrative Law Judges
ECF-DEA@dea.gov

Yoona Lim, Esq.
DEA Office of Chief Counsel
Yoo.N.Lim@dea.gov